Reuben D. Nathan, Esq. (SBN 208436)
Email: *rnathan@nathanlawpractice.com*
NATHAN & ASSOCIATES, APC
2901 West Pacific Coast Highway, Suite 350
Newport Beach, California 92663
Telephone: (949) 270-2798
Facsimile: (949) 209-0303

Attorneys for Plaintiff,
Robert Bryce Stewart III and the Proposed Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BRYCE STEWART III, as an individual on behalf of himself and all others similarly situated and the general public,<br><br>Plaintiff,<br><br>v.<br><br>THE KRAFT HEINZ COMPANY; KRAFT HEINZ INGREDIENTS CORP. and DOES 1 through 10, inclusive.<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

1

**CLASS ACTION COMPLAINT**

1      Plaintiff, ROBERT BRYCE STEWART III ("Plaintiff") brings this action on behalf of himself

2  and all others similarly situated against THE KRAFT HEINZ COMPANY ("KRAFT HEINZ") and

3  KRAFT HEINZ INGREDIENTS CORP. ("KRAFT INGREDIENTS"), collectively referred to as

4  "Defendants" or "KRAFT HEINZ."  Plaintiff makes the following allegations based upon information

5  and belief, except as to the allegations specifically pertaining to themselves, which are based on

6  personal knowledge.

7      **<u>INTRODUCTION</u>**

8      1.     Defendant KRAFT HEINZ is worldwide multi-conglomerate company.  According to its

9  website, "The Kraft Heinz Company is the third-largest food and beverage company in North America

10  and the fifth-largest food and beverage company in the world, with eight $1 billion brands.  A globally

11  trusted producer of delicious foods, The Kraft Heinz Company provides high quality, great taste and

12  nutrition for all easting occasions whether at home, in restaurants or on the go[1]."  KRAFT is a publicly

13  traded company listed on the NASDAQ exchange as "KHC", which trades for approximately $31.00 a

14  share and has a market share of $37.89 billion at the time of drafting this complaint.  On information

15  and belief, KRAFT INGREDIENTS is involved in the marketing, distribution, and sale of the products

16  sold by KRAFT HEINZ.

17      2.     Among its vast line of well-known products that KRAFT HEINZ manufactures,

18  distributes, and sells, is the highly popular brand "Crystal Light."  Near its inception in the mid-80's

19  Crystal Light was synonymous with working out since it was branded as a low calorie drink.  Crystal

20  Light first reached global popularity in the mid-80's through the then popular actress, Linda Evans,

21  who enabled the brand to gain immediate traction with her workout related Crystal Light

22  advertisements.

23  *//*

24

25

26  [1] https://www.kraftheinzcompany.com (last visited January 20, 2020)

2

27         **CLASS ACTION COMPLAINT**

28

3.      Over the decades, Defendant KRAFT HEINZ has launched several variations of the product line, which included labeling changes to meet consumer demands.  In order to meet these consumer demands which in the recent decade require healthier choice products, including no sugar, or no artificial flavors or colors, Defendant KRAFT HEINZ has injected additional newer products lines into the marketplace, which advertise products as containing no artificial flavors.  These product lines of the Crystal Light brand with no artificial flavors include, "Pure Fitness," "On The Go," "Pure," and "Liquid." In conjunction with KRAFT INGREDIENTS, KRAFT HEINZ has promoted, marketed, and sold products to consumers that do not comply with various consumer protections law statutes.

4.      Defendants KRAFT HEINZ manufactures, distributes, advertises, and sells several products within each of the Crystal Light product lines that specifically represent that the products contain "No Artificial Flavors."   Among these purportedly non-artificial flavored juice beverage products, include:      a) Strawberry Crystal Light Pure;

b) Tropical Blend Crystal Light Pure;

c) Grape Crystal Light Pure;

d) Mango Tangerine Pure;

e) Blackberry Cherry Lime Crystal Light Liquid;

f) Berry Sangria Crystal Light Liquid;

g) Tropical Coconut Crystal Light Liquid;

h) Mango Passion Fruit Crystal Light Liquid;

i) Blueberry Raspberry Crystal Light Liquid;

j) Peach Mango Green Tea Crystal Light;

k) Raspberry Iced Tea Crystal Light;

l) Peach Mango Green Tea Crystal Light;

m) Classic Orange On the Go;

(collectively, the "Products").

3

**CLASS ACTION COMPLAINT**

5.     Consistent with Defendants KRAFT's self-promotion as an industry leader in food and beverage space, the front packaging of each of the Products state in prominent lettering: "NO artificial flavors."  An example of the prominent lettering contained in the upper right-hand corner representing to consumers the Products contain "NO" (the word "NO" is bolded and in capital lettering) artificial flavors is set forth below:



6.     To reinforce the impression that the Products do not contain artificial flavoring, the front packaging of each of the Products display pictures of actual fruits with leaves pertaining to the specific fruit juice blend that is in question.  Examples are depicted in the below pictures:

//

//

4

**CLASS ACTION COMPLAINT**




7.      Contrary to the labeling, however, on information and belief, each of the Products contains artificial flavoring that is used to simulate and affect the flavor.  On the back of the Products, Defendants KRAFT discloses in tiny fine print that that it incorporates malic acid (the artificial flavoring at issue here) in the Products.

8.      Defendant's representations are false, misleading, unfair, unlawful, and are likely to deceive members of the public, and continue to do so.   Defendant's practices violate consumer laws such as California Legal Remedies Act, Sherman Food & Drug Act, False Advertising laws, and New York General Business Law §§ 349 and 350. In addition, Defendant's representations also give rise to a

**CLASS ACTION COMPLAINT**

50-state class alleging claims for fraud, negligent misrepresentation, unjust enrichment, and breach of express warranty.

**JURISDICTION AND VENUE**

6.     This Court has personal jurisdiction over Defendants.  Defendants are both Delaware corporations with its principal place of business located in Illinois, which purposefully avails themselves of the United States consumer market, and distributes the Products to locations within this District and thousands of retail locations throughout across the United States, including, California, and New York where the Products are purchased by thousands of consumers on a weekly basis.

7.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed Plaintiff class, any member of the Plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

8.     Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, emanated or occurred within this District.

**PARTIES**

9.     Plaintiff Robert Bryce Stewart III ("Stewart") is a citizen of the United States, was a resident of Los Angeles and is currently a resident of New York when he purchased the Crystal Light products, including the Products between 2017-2020.  Plaintiff Stewart purchased several of the

6

**CLASS ACTION COMPLAINT**

Products from local grocery stores in and around the Los Angeles, and New York, and other neighboring cities and towns.

10. Prior to purchasing the Products, each Plaintiff saw and read the front of the Products' packaging and relied on the representations and warranty that the Products contained "**NO** artificial flavors." The language "NO artificial flavors" is placed in a prominent box-like feature, which is isolated from other language on the front packaging, in bolded lettering, with a contrasting color behind the lettering to ensure it stands out to the consumer. Plaintiff also saw prominent pictures of fruits on the front packaging, which—in the context of the labeling "**NO** artificial flavors"—reinforced the impression that the Products did not contain artificial or synthetic flavors. Plaintiff purchased the Products at a substantial price premium and would not have bought the Products had he known that the labeling they each relied on was false, misleading, deceptive, and unfair.

11. Plaintiff would purchase the Products again in the future if Defendant changed the composition of the Products so that they conformed to their labeling and marketing.

12. Defendant The Kraft Heinz Company is a Delaware Corporation that has its principal place of business located at Chicago, Illinois.

13. Defendant Kraft Heinz Ingredients Corp. is Delaware Corporation that has its principal place of business located in Glenview, Illinois.

14. Defendants produce, market and distribute Crystal Light and the Products throughout retail stores across the United States, including California and New York. Defendants knew that the labeling of the Products is false and misleading to a reasonable consumer, because the Products contain artificial flavoring, which is inconsistent with the Product's labeling.

15. Plaintiff and members of the classes described below paid a premium for Defendants' Products over comparable products that did not purport to contain no artificial flavors. In fact, companies producing comparable products intentionally disclose that their products contain artificial flavoring. //

7

**CLASS ACTION COMPLAINT**

## FACTS COMMON TO ALL CAUSES OF ACTION

16.     Consumers have become increasingly interested in foods, cleaning products, bath and beauty products, and everyday household products that do not contain synthetic or chemical ingredients. Companies such as Defendants have capitalized on consumers' preference for non-artificial or synthetic ingredients.  Consumers are willing to pay, and have paid, a premium for products branded as containing no artificial or synthetic ingredients.

17.     In 2010, sales of products with no artificial or synthetic related ingredients grew 6% to $117 billion.[2]  Reasonable consumers, including Plaintiff and the Class Members, value products that do not contain artificial or synthetic ingredients.

18.     As a result of consumers' desires for products that do not contain artificial or synthetic ingredients, the Federal Trade Commission ("FTC") has warned marketers that the use of the term 'natural' may be deceptive: "Marketers that are using terms such as 'natural' must ensure that they can substantiate whatever claims they are conveying to reasonable consumers.  If reasonable consumers could interpret a 'natural' claim as representing that a product contains no *artificial ingredients*, then the marketer must be able to substantiate that fact.[3]  Accordingly, Defendant must substantiate any statements that claim the Products contain "**NO** artificial flavors."

19.     Consumers lack the meaningful ability to test or independently verify whether a product contains certain artificial or synthetic ingredients, especially at the point of sale.  Consumers would not know the true nature of the ingredients and must trust the representations on packaging.  Moreover,

---

[2] *About the Natural Products Association,* NATURAL PRODUCTS ASSOCIATION (last accessed July 2018), http://www.npainfo.org/NPA/About_NPA/NPA/AbouttheNaturalProductsAssociation.aspx?hkey=8d3a15ab-f44f-4473-aa6e-ba27ccebcbb8; *Chemical Blessings What Rousseau Got Wrong*, THE ECONOMIST, Feb. 4, 2008, available at http://www.economist.com/node/10633398; *see also* Hunger Oatman-Standford, *What Were We Thinking? The Top 10 Most Dangerous Ads*, COLLECTORS WEEKLY (Aug. 22, 2012), http://www.collectorsweekly.com/articles/the-top-10-most-dangerous-ads/ (featuring advertisements for dangerous synthetic chemicals that were once marketed as safe).

[3]  75 Fed. Reg. 63552, 63586 (Oct. 15, 2015)

8

## CLASS ACTION COMPLAINT

consumers are not expected or required to scour the ingredients list on the back of the Products to confirm or debunk Defendant's prominent front-of-the-packaging claims, representations, and warranties that the Products contain "**NO** artificial flavors."

20.    Even sophisticated consumers should be able to trust the labeling on the Products. Manufacturers are required to properly label and inform consumers of the true nature of the ingredients for consumers to make an informed decision.  Discovering that ingredients are actually artificial or synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.

21.    Malic acid is a substance used in the food industry to generate a sour, fruity, or tart taste, which is either naturally occurring or artificial/synthetic.

22.    Naturally occurring malic acid is referred to as "l-malic acid," which is found is fruits and vegetables.  The artificial or synthetic malic acid is known as "dl-malic acid,"[4] which is a racemic mixture of d- and l-isomers.

23.    Malic acid is a saturated dicarboxylic acid. Dl-malic acid is a synthetic ingredient, chemically manufactured from petroleum feed stocks.[5]  It is made in petrochemical plants from benzene or butane.  Dl-malic acid is scientifically known as d-hydroxybutanedioic acid.  The synthetic ingredient dl-malic acid is used by Defendants to provide characterizing flavors similar to the natural fruit flavor Defendants claims is contained in the Products.

24.    It is made in petrochemical plants from benzene or butane.  Dl-malic acid is scientifically known as d-hydroxybutanedioic acid.  The synthetic ingredient dl-malic acid is used by Defendants to provide characterizing flavors similar to the natural fruit flavor Defendants claims is contained in the Products.

---

[4] West TP, Malic acid production from thin stillage by *Aspergillus* species. Biotechnol Lett 33: 2463-2467 (2011).

[5] West, J Microbial , Biochem Technol, 4:4 DOI:10.4172/1948:1000e106 (2012).

**CLASS ACTION COMPLAINT**

25. Defendants intentionally failed to disclose that the malic acid used in the Products are artificial ingredients. A reasonable consumer understands Defendants' claims that the Products contain no "artificial" flavoring to mean that the flavoring is derived from a natural source.

26. The label claims that it contains no artificial flavors is false because dl-malic acid used in the Products are artificial flavors. Defendants' representations that the Products contain no artificial flavoring induced consumers, including Plaintiff and Class Members, to pay a premium to purchase the Products. Plaintiff and Class Members relied on Defendant's false and misleading misrepresentations in purchasing the Products at a premium price above comparable alternatives that are not represented as containing no artificial flavoring. If not for Defendants' misrepresentations, Plaintiff and Class Members would not have been willing to purchase the Products at a premium price. Accordingly, they have suffered an injury as a result of Defendants' misrepresentations.

27. Based on the language that appears on the front of each of the Products, Plaintiff reasonably believed that the Products contained no artificial flavoring.

28. The phrase "**NO** artificial flavoring" is a representation to a reasonable consumer that the Products contain only natural flavors. The phrase is misleading to a reasonable consumer because Products actually contain unnatural and synthetic ingredients for flavoring.

29. Defendant prominently displays that the Products contain "**NO** artificial flavoring."

30. The phrase "**NO** artificial flavoring" is a representation to a reasonable consumer that Products contains only natural flavors. These phrases are misleading to a reasonable consumer because the Products actually contain unnatural and synthetic flavors. Defendants knew that consumers will pay more for a product labeled no artificial flavors and intended to deceive Plaintiff and Class Members by labeling Products as purportedly naturally flavored products.

31. Plaintiff did not discover that the labeling was false and misleading until 2018 when he discovered the Products contained artificial flavoring. Despite reasonable diligence, Plaintiff would not have discovered and lacked the means to discover the deceptive nature of Defendants' violations of law,

10

**CLASS ACTION COMPLAINT**

because he lacked the means to do so and relied on the Defendants' obligation, as manufacturers, to label its Products in compliance with the law.  Moreover, Defendants' labeling practices were/are intentionally intended to deceive consumers, including Plaintiff and the proposed classes, because the labeling lists ingredients for the flavoring of the Product that are not artificial, which further impeded Plaintiff's ability to discover the violations of law.  Plaintiff and the proposed classes are entitled to delayed discovery and equitable tolling because of Defendants' intentional concealment of the violations of law.

**U.S. FOOD DRUG AND COSMETIC ACT AND STATE STATUTES**

32.     The U.S. Food Drug and Cosmetic Act ("FD&C") is a set of laws passed by Congress in 1938 that provides authority to the U.S. Food and Drug Administration ("FDA")[6] to oversee the safety of food, drugs, and cosmetics.  There is a distinction in food adulteration between those that are added and those that are naturally present.  Substances that are added are held to a stricter "may render (it) injurious to health" standard, whereas substances that are naturally present need only be at a level that "does not ordinarily render it injurious to health."[7]

33.     The FDA has established rules, which are been codified in the Code of Federal Regulations ("CFR"), specifically addressing food labeling.

34.     21 CFR 101.22(a)(1):  The term *artificial flavor* or *artificial flavoring* means any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

35.     21 CFR 101.22(a)(3):  The term *natural flavor* or *natural flavoring* means the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice,

---

[6] 15 U.S.C. 1453, 1454, 1455; 21 U.S.C. 321, 331, 342, 343, 348, 371; 42 U.S.C. 243, 264, 271.
[7] FD&C Act Chapter IV.

11

**CLASS ACTION COMPLAINT**

vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.

36.     21 CFR 101.22(a)(5)(c):  A statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food. The specific artificial color used in a food shall be identified on the labeling when so required by regulation in part 74 of this chapter to assure safe conditions of use for the color additive.

37.     21 CFR 102.5(c):  The common or usual name of a food shall include a statement of the presence or absence of any characterizing ingredient(s) or component(s) and/or the need for the user to add any characterizing ingredient(s) or component(s) when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present when it is not, and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food. The following requirements shall apply unless modified by a specific regulation in subpart B of this part.

38.     21 CFR §101.4(a)(1) provides that "[i]ngredients required to be declared on the label or labeling of a food, including foods that comply with standards of identity, except those ingredients exempted by §101.100, shall be listed by common or usual name…"[8]

39.     Congress has defined "synthetic" to mean a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources…7 U.S.C. § 6502 (2.1).

---

[8]  21 CFR §101.4(a)(1).

**CLASS ACTION COMPLAINT**

40.     Several local governments, including, California and New York have developed and passed laws to regulate the identification, labeling, and disclosures of food products to ensure consumers are not misled or deceived.  In addition to creating a robust set of laws, local governments have incorporated provisions of the FD&C.

41.     California Health & Safety Code §110740 states that "[a]ny food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact."[9] California's Sherman Food, Drug, and Cosmetic Act ("Sherman Act"), Cal. Health & Safety Code §109875, et seq., incorporates the U.S. Food Drug and Cosmetic Act ("FDCA") into the California regulation. A violation of the FDCA is a violation of the Sherman Act.[10]

42.     New York's Pure Food and Drug Act §71.05(a) provides that "[n]o person shall manufacture, produce, pack, possess, sell, offer for sale, deliver or give away any food, drug or cosmetic which is adulterated or misbranded.  New York, The Pure Food and Drug Act §71.05(c) states that "[a] food shall be deemed adulterated if the Department has determined the food to be adulterated or as set forth in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. §342)" and "[a] food shall be deemed misbranded in accordance with the Federal Food, Drug and Cosmetic Act (21 U.S.C. §343)."

## CLASS ALLEGATIONS

55.     Plaintiff Stewart seeks to represent a class defined as all persons in the United States who purchased the Products (or any related product) on or after January 2013 to the present date (the "Nationwide Class").  Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

---

[9]  California Health & Safety Code §110760, 110765 are similar to California Health & Safety Code §110740 and declares that it is unlawful to misbrand food.
[10]  California's Sherman Food, Drug, and Cosmetic Act ("Sherman Act"), Cal. Health & Safety Code §110100.

## CLASS ACTION COMPLAINT

43.     Plaintiff Stewart seeks to represent a class defined as all persons in New York who purchased the Products (or any related product) on or after January 2013 to the present date (the "New York Subclass").   Excluded from the New York Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

44.     Plaintiff Stewart seeks to represent a Subclass of all persons in California who purchased the Products (or any related product) on or after January 2013 to the present date (the "California Subclass").  Excluded from the California Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

45.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual class members (the members of Nationwide Class, New York Subclass, and California Subclass will hereinafter be referred to as "Class Members" or the "Class") include, but are not limited to the following:

a.     whether Defendant misrepresented material facts concerning the Products on the label of every product;

b.     whether the Products contain artificial flavoring;

c.     whether Defendant's conduct is/was unfair and/or deceptive;

d.     whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the classes;

e.     whether Defendant breached express warranties to Plaintiff and the classes;

14

**CLASS ACTION COMPLAINT**

      f.      whether Defendant failed to disclose the presence of artificial coloring in the Products;

      g.      whether the statement "**NO** artificial flavors" is false or misleading;

      h.      whether Defendant violated California Legal Remedies Act, California Business and Professions Code, California's Sherman Food, Drug, and Cosmetic Act ("Sherman Act"), and Cal. Health & Safety Code

      i.      whether Defendant violated New York Gen. Bus. Law sections 349, 350;

      j.      whether the statement "**NO** artificial flavors" violated any express or implied warranties;

      k.      whether there should be a tolling of the statute of limitations;

      l.      whether Plaintiff and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

      m.      whether the Class is entitled to restitution, rescission, damages, and attorneys' fees and costs.

49.     Plaintiff' claims are typical of those of other class members because Plaintiff, like all members of the classes, purchased Defendant's Products bearing the representations and Plaintiff sustained damages from Defendant's wrongful conduct.

50.     Plaintiff will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the classes.

51.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

//

//

15

**CLASS ACTION COMPLAINT**

52.     The prerequisites to maintaining a class action for equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

53.     The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of the classes even where certain Class members are not parties to such actions.

## COUNT I

### Fraud

### (On Behalf of Plaintiff and All Class Members Against Defendants)

54.     Plaintiff repeats and re-alleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

55.     Plaintiff brings this claim individually and on behalf of the proposed Nationwide Class, California Subclass, and New York Subclass against Defendant.

56.     Defendants made material representations through its labeling to Plaintiff and Class members that the Products contain "**NO** artificial flavors."

57.     Defendants provided Plaintiff and Class members with false or misleading material information about the Products, because the Products contain artificial flavors.

58.     Defendants made these misrepresentations to Plaintiff and Class members that the Products contain "**NO** artificial flavors" knowing it was false.

59.     Defendants' misrepresentations, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Products.

//

16

**CLASS ACTION COMPLAINT**

60.     Defendants made these misrepresentations to Plaintiff and Class members knowing that they were false and Plaintiff would rely to his detriment, which he did, by purchasing the Products.

61.     Defendants' fraudulent actions harmed Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT II

### Negligent Misrepresentation

### (On Behalf of Plaintiff and All Class Members Against Defendants)

62.     Plaintiff repeats and re-alleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

63.     Plaintiff brings this claim individually and on behalf of the proposed Nationwide Class, California Subclass, and New York Subclass against Defendants.

64.     At all times, in purchasing the Products, Plaintiff and Class members believed prior to making purchases that they were purchasing Products that contain "**NO** artificial flavors"  as a result of Defendants' labeling and advertising.

65.     Plaintiff and Class members read and relied on Defendants' labeling on the front of the Products setting forth the representations and/or warranties prior making any purchase of the Products.

66.     Defendants had a duty to disclose and failed to disclose to Plaintiff and Class members that the Products contain artificial flavors.

67.     At the time Defendants made the false claim that its Products contained "**NO** artificial flavors." Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

68.     In addition, Defendants omitted material facts about the Products by not disclosing on the labeling that the Products contained synthetic dl-malic acid.

69.     Plaintiff and the Class Members reasonably and justifiably relied on Defendants' statements or omissions and were deceived and induced into purchasing the Products.

17

**CLASS ACTION COMPLAINT**

70.     The misrepresentations and/or omissions made by Defendants, upon which Plaintiff and the Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and the Class members to purchase the Products.  Defendants' representations that the Products contain no "**NO** artificial flavors" were material to the Plaintiff, Class members, and any reasonable consumer in their decision to purchase.

71.     Plaintiff and Class members would not have purchased the Products and/or would not have paid a price premium therefore, if the true facts had been known regarding the falsity of Defendants' statements and representations.

72.     The negligent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT III**

**Breach of Express Warranty**

**(On Behalf of Plaintiff and All Class Members Against Defendants)**

73.     Plaintiff repeats and re-alleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

74.     Plaintiff brings this claim individually and on behalf of the proposed Nationwide Class, New York Subclass, and California Subclass against Defendants.

75.     Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, expressly warranted that the Products contain "**NO** artificial flavors." Defendants intentionally highlight the language "**NO** artificial flavors" by using a different color behind the lettering to prominently display the express warranty.

76.     The front labeling with the representations of fruits and leaves is also misleading and further creates an express warranty to support the representation that there is "**NO** artificial flavors."

77.     Defendants' express warranties, and its affirmations of fact and promises made to Plaintiff and the Nationwide Class and respective Subclasses regarding the Products, became part of the

18

**CLASS ACTION COMPLAINT**

basis of the bargain between Defendants and Plaintiff, the Class, and Subclasses, which creates an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

78.     The Products do not conform to the express warranty that the Products contain "**NO** artificial flavors" because they contain ingredients that are unnatural and synthetic i.e. dl-malic.

79.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients; (b) they paid a substantial price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT IV

### Unjust Enrichment

### (on Behalf of Plaintiff and All Class Members against Defendants)

80.     Plaintiff repeats and re-alleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of the proposed Nationwide Class, New York Class, and California Class against Defendants.

82.     Plaintiff, Nationwide Class and the respective Subclasses conferred monetary benefits to Defendants by purchasing the Products for a premium price.

83.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff, Nationwide Class, and the respective Subclasses' purchases of the Products based on the representations that the Products contain "**NO** Artificial Flavors."

84.     Retention of those monies under these circumstances is unjust and inequitable, because of Defendants' misrepresentations and omissions about the Products caused injuries to Plaintiff,

19

**CLASS ACTION COMPLAINT**

Nationwide Class, and the respective Subclasses, because they would not have purchased the Products if the true facts regarding the artificial and/or synthetic ingredients had been known.

85.    Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff, Nationwide Class, and the respective Subclasses is unjust and inequitable, Defendants must pay restitution to Plaintiff, Nationwide Class, and the respective Subclasses for their unjust enrichment, as ordered by the Court.

### COUNT V

**Violation of New York GBL § 349**

**(On Behalf of Plaintiff and All New York Subclass Members against Defendants)**

86.    Plaintiff repeats and re-alleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

87.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

88.    The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, New York, The Pure Food and Drug Act §71.05(a), New York, The Pure Food and Drug Act §71.05 (c), and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

89.    There is no adequate remedy at law.

90.    Defendants misleadingly, inaccurately, and deceptively presented its Products to consumers.

91.    Defendants' improper consumer-oriented conduct—including labeling and advertising the Products as not containing artificial flavoring —is misleading in a material way in that it, *inter alia*,

**CLASS ACTION COMPLAINT**

induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendants' Products and to use the Products when they otherwise would not have.

92.     Defendants made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

93.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendants' representations—containing artificial flavors. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

94.     Defendants' advertising and product packaging and labeling induced the Plaintiff and the New York Subclass Members to buy Defendants' Products and to pay a premium price for them.

95.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass have been damaged thereby.

96.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

97.     Plaintiff and the New York Subclass Members seek damages, including treble damages, under GBL § 349.

### COUNT VI

**Violation of New York GBL § 350**

**(On Behalf of Plaintiff and All New York Subclass Members against Defendants)**

98.     Plaintiff repeats and re-alleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

21

**CLASS ACTION COMPLAINT**

99.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:  "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

100.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:
The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.   In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

101.     Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendants' Products inasmuch as they misrepresent that the Products do not contain artificial flavors.

102.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products based on Defendants' representations — "**NO** Artificial Flavors." Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

103.     Defendants' advertising, packaging and product labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

104.     Defendants made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

105.     Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

106.     Defendants made the material misrepresentations described in this complaint in Defendants' advertising, and on the Products' packaging and labeling.

**CLASS ACTION COMPLAINT**

107. Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

108. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

109. Plaintiff and the New York Subclass Members seek damages, including treble damages, under GBL § 350.

<u>**COUNT VII**</u>

**Violation of New York GBL § 350-a(1) by Omission**

**(On Behalf of Plaintiff and All New York Subclass Members against Defendant)**

110. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

111. N.Y. Gen. Bus. Law § 350-a(1) expressly covers material omissions:

> In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual…

23

**CLASS ACTION COMPLAINT**

112.    Defendants' products' labeling and advertising contain misleading and/or unfair material omissions concerning Defendants' Products.  The Products' labeling and advertising omit that:  1) the Products contain synthetic ingredients; and 2) the Products contain artificial flavors.

113.    Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labels and advertising and paid a premium for Products that, contrary to Defendants' labels and advertising, contain artificial flavors.

114.    Defendants made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

115.    Defendants' dissemination of advertising and labeling containing material omissions of fact constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

116.    Defendants' material misrepresentations by way of omission, as described in this Complaint, were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations by way of omission.

117.    Defendants' advertising and labeling for the Products induced the Plaintiff and the New York Subclass Members to buy the Products at a premium price.

118.    Plaintiff and the New York Subclass Members relied on Defendants' advertising, which was deceptive, false, and contained material omissions.

119.    As a result of Defendants' false and misleading advertising and labeling, the Plaintiff and the New York Subclass Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

120.    Plaintiff and the New York Subclass Members seek damages, including treble damages, under GBL § 350-a(1).

**CLASS ACTION COMPLAINT**

**<u>COUNT VIII</u>**

**Violation Of California's Consumers Legal Remedies Act ("CLRA"),**

**California Civil Code §§ 1750, *et seq.***

**(On Behalf of Plaintiff and All Class Members against Defendants)**

**(Injunctive Relief Only)**

121.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

122.    This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ I750-I785 (the "CLRA").

123.    Plaintiff and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

124.    Plaintiff and the other members of the California Subclass, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

125.    The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and Defendants' conduct that was undertaken by Defendants in transactions, intended to result in, and which did result in, the sale of goods to consumers.

126.    As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiffs and the other members of the California Subclass that the Products contain "**NO** artificial flavors" when in fact they are made with synthetic ingredients.

127.    As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

25

**CLASS ACTION COMPLAINT**

128.    Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of himself and all other members of the California Subclass, seeks injunctive relief.

## COUNT IX

**Violation Of California's Unfair Competition Law ("UCL"),**

**California Business & Professions Code §§ 17200, *et seq.***

**(On Behalf of Plaintiff and All Class Members against Defendants)**

129.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

130.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

131.    Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

132.    Defendants violated the "unlawful" prong of the UCL by violating the 21 CFR 101.22(a)(1), 21 CFR 101.22(a)(3), 21 CFR 101.22(a)(5)(c), 21 CFR 101.25(a), 21 CFR 101.4(a)(1), 7 U.S.C. §6502, California' Sherman Food Drug & Cosmetic Act, Cal. Health & Safety Code §§109857, 110100, 110760, 110765, New York, The Pure Food and Drug Act §71.05(a), New York, The Pure Food and Drug Act §71.05(c), CLRA and the FAL, as alleged herein.

133.    Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

26

**CLASS ACTION COMPLAINT**

134.    Defendants violated the "fraudulent" prong of the UCL by misrepresenting that the Products do not contain artificial flavors, when, in fact, they are made with synthetic ingredients.

135.    Plaintiff and the California Subclass lost money or property as a result of Defendants' UCL violations because: because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with unnatural and synthetic ingredients (b) they paid a substantial price premium compared to other products due to Defendants' misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

<u>**COUNT X**</u>

**Violation Of California's False Advertising Law ("FAL"),**

**California Business & Professions Code §§ 17500, *et seq.***

**(On Behalf of Plaintiff and All Class Members against Defendants)**

136.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

137.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

138.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

139.    Defendants committed acts of false advertising, as defined by §§17500, *et seq.*, by misrepresenting that the Products do not contain artificial flavors, when they are not.

140.    Defendants knew or should have known through the exercise of reasonable care that their representations about the Products were untrue and misleading.

27

**CLASS ACTION COMPLAINT**

Defendants' actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived.  Plaintiff and the California Subclass lost money or property as a result of Defendants' FAL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with unnatural and synthetic ingredients; (b) they paid a substantial price premium compared to other fruit juice products due to Defendants' misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and members of the Nationwide Class, New York Subclass, and California Subclass, as follows:

A.      For an order certifying the Nationwide Class, New York Subclass, and California Subclass; naming Plaintiff as Class and Subclass representative; and naming Plaintiff's attorneys as Class Counsel representing the Class and Subclass members;

B.      For an order finding in favor of Plaintiff, the Nationwide Class, California Subclass, and New York Subclass, on all counts asserted herein;

C.      For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D.      For injunctive relief enjoining the illegal acts detailed herein;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For an order awarding Plaintiff their reasonable attorneys' fees and expenses and costs of suit.

//

//

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: February 6, 2020                             Respectfully submitted,


                                                    /s/ Reuben D. Nathan

                                                    **NATHAN & ASSOCIATES, APC**
                                                    Reuben D. Nathan, Esq.
                                                    2901 W. Coast, Suite 200
                                                    Newport Beach, California 92663
                                                    Telephone: (949)270-2798
                                                    E-Mail: rnathan@nathanlawpractice.com

**CLASS ACTION COMPLAINT**

### CLRA VENUE DELCARATION PURSUANT TO CAL. CIV. CODE §1780(d)

I, Robert Byrce Stewart III, declare as follows in accordance with California Civil Code Section 1780(d):

1. I am the plaintiff in this action and I was a citizen of the state of California at the time the transaction occurred.  I have personal knowledge of the facts stated herein and if called as a witness, I could and would testify competently thereto.
2. The complaint filed in this action is filed in the proper place for trial pursuant to California Civil Code Section 1780(d) because the Defendants, The Kraft Heinz Company and Kraft Heinz Ingredients Corp. ("Defendants") conduct substantial business in this District and the transaction occurred in the District.
3. I purchased Defendant's branded "Crystal Light" products from stores located in Los Angeles, California and neighboring cities.  I relied on the Defendants' false and misleading advertising that the products contain "NO artificial flavors" before making my purchases, which meant to me that they contained no artificial or synthetic ingredients for flavoring. The representations and warranties made by Defendants was a substantial factor influencing my decision to purchase the Crystal Light products.
4. If I were aware that the Defendant's products contained artificial and/or synthetic ingredients for flavoring, I would not have purchased them.

I declare under penalty of perjury under the laws of the state of California a that the foregoing is true and correct as executed on this ___2/6/2020___ in Brooklyn, New York.

_____
Robert Bryce Stewart III